UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Reed Dunlea,<br><br>                    Plaintiff,<br><br>— against —<br><br>City of New York, NYPD Inspector Bruce Ceparano, Steven Brown, and John Doe NYPD Officers 1-10<br><br>                    Defendants. | Index No. 25-cv-1249<br><br>COMPLAINT<br><br>JURY TRIAL DEMANDED |

## PRELIMINARY STATEMENT

1. Reed Dunlea is a journalist whose First and Fourth Amendment rights were violated by the New York City Police Department and its officers on February 10, 2024.

2. Mr. Dunlea was covering a protest against the war in Gaza at Brooklyn Museum.

3. While exercising his First Amendment right to cover the protest, Mr. Dunlea was assaulted and arrested without cause.

4. The NYPD has a history of targeting journalists covering protests at left-wing causes.

5. The NYPD specifically targeted journalists covering protests regarding Israel and Palestine for politically motivated reasons.

6. Mr. Dunlea was assaulted and arrested just days after the NYPD had agreed to reform its practices regarding treatment of press at protests in settling a prior litigation.

7. The blatant disregard for the speech writes of journalists on display that day is part of an NYPD policy to suppress speech it disagrees with.

8. Its actions against Mr. Dunlea are part and parcel of that pattern. It continues to this day.

9. Preventing governmental viewpoint discrimination is at the heart of the First Amendment and a free press is the beating heart of American democracy.

10. Mr. Dunlea's assault, arrest, and prosecution are a result of the NYPD's attempts to suppress speech and he must be compensated.

## PARTIES

11. Plaintiff Reed Dunlea is a journalist and a resident of Brooklyn, NY.

12. Defendant City of New York is a municipal corporation.

13. Defendant Bruce Ceparano is an NYPD Inspector at the Patrol Services Bureau.

14. Steven Brown is an NYPD officer who was Mr. Dunlea's arresting officer.

15. Officers John Doe 1-10 are NYPD Officers who assaulted and arrested Mr. Dunlea.

## FACTUAL BACKGROUND

16. Reed Dunlea is a journalist who was covering a protest in and around the Brooklyn Museum on Eastern Parkway on February 10, 2024.

17. Mr. Dunlea was wearing a New York City-issued press pass that clearly indicated he was a member of the press.

18. Mr. Dunlea was recording a conversation between Defendant Ceparano, a senior officer, and a group of protestors, who were involved in a shouting match.

19. In order to do so, he stepped out into the street briefly, but stayed on the edge of the police line.

20. Defendant Ceparano screamed at him to get on the sidewalk, and in response he displayed his press pass.

21. Defendant continued to scream at him, so he moved back onto the sidewalk.

22. Twenty minutes after that, arrests of the protestors began happening at random.

23. Mr. Dunlea moved into the street to cover the arrests in his capacity as a journalist.

24. While he was doing so, without warning, he was tackled and violently thrown to the ground by Defendants and John Doe Officers who were grabbing people from the protest and arresting them.

25. He was then dragged across the street, while shouting that he was press and that he was not resisting.

26. Video of the aftermath of the assault and of the arrest shows Mr. Dunlea prone, and clearly not resisting.

27. He had arrived to cover the protest at 1:30 p.m. and was in a police van by 2:15 p.m.

28. He would not be released until after midnight.

29. He was given a Desk Appearance Ticket for resisting arrest.

30. His recording equipment was damaged in the arrest and the audio of the conversation and of the arrest went missing.

31. Mr. Dunlea's charges were dismissed on March 4, 2024.

32. Mr. Dunlea's went to the hospital for x-rays and treatment on his elbow, which had deep contusions but fortunately no fractures.

33. The pain in the elbow was sufficient to keep him up at night any time he rolled onto the contusion.

## MUNICIPAL LIABILITY ALLEGATIONS

34. The NYPD has a long history of viewpoint discrimination and of targeting journalists as part of a *de facto* policy of arresting protestors and journalists where they disagree with the underlying subject matter of the protests.

35. In 1977, following a class action lawsuit filed by the New York Civil Liberties Union, the City entered into a consent decree with the NYCLU that specifically

acknowledged that individuals remain free to photograph police activity, even in circumstances where the police are effecting an arrest.

36. At the RNC in 2004, the NYPD further targeted photographers and press, arresting 1,800 people, leading to dozens of civil rights lawsuits.

37. At the Occupy Wall Street protests of 2011 and 2012, the NYPD repeatedly arrested and assaulted journalists covering the protests, with over twenty violent incidents that have been documented in numerous lawsuits against the NYPD.

38. The NYPD and its officers' conduct during the George Floyd Protests led to a suit by Adam Gray, Jason Donnelly, Diana Zeyneb Alhindawi, Jemell D. Cole and Amr Alfiky regarding their arrests and mistreatment at the Floyd protests. Each was targeted because they were journalists. This Complaint incorporates the Complaint from their case 21-cv-06610, and its detailed descriptions of the history of NYPD repression of journalists covering protests.

39. To resolve that action, the NYPD entered into an agreement to enact sweeping policy changes: Under the terms of the settlement agreement, the NYPD was obligated to implement policies and trainings designed to ensure that members of the press are free from the threat of wrongful arrest and harassment Among its key terms, the agreement:

 a. flatly prohibits NYPD officers from arresting, restricting, or interfering with members of the press for merely observing or recording police activity in public places;

b. requires that the NYPD provide journalists with access "to any location where the public is permitted" and bars NYPD officers from putting up crime/accident/incident scene tape or establishing "frozen zones" for the purpose of preventing members of the press from viewing or recording events in public places;

c. mandates that neither a press pass nor any other form of press identification is needed to observe or record police activity occurring in public places, including areas where protests, crimes, or other matters of public concern are taking place;

d. permits credentialed journalists to continue to do their jobs and remain in the area even after a dispersal order is issued to the general public;

e. discourages unconstitutional "catch and release" practices, under which journalists have all-too-often been unlawfully detained at police stations for hours before charges against them are finally dropped; and

f. requires that the NYPD recognize the legitimacy of press passes that are issued by jurisdictions outside New York City.

g. In the agreement, the NYPD also-for the first time ever-formally acknowledges that the press has a clearly established First Amendment right to record police activity in public places, and commits itself to respect that right.

h. Equally important, the settlement agreement also requires that the NYPD provide extensive annual training to all of its officers-ranging from police academy cadets to high-ranking executive personnel-on the First Amendment

rights of the press and establishes a police-media relations committee to monitor and discuss future incidents involving the press. Additionally, for a period of three years, a committee headed by the New York City Department of Investigation will monitor police activity at protests to ensure that the NYPD complies with its commitments to respect the rights of peaceful protesters, journalists, and legal observers.

40. Mr. Dunlea's assault and arrest came before the effective date of that agreement. And the policy reforms appear insufficient to deter behavior. Numerous journalists have been assaulted at pro-Palestinian protests since Mr. Dunlea's assault. These include:[1]

    a. Samuel Seligson was arrested and charged with felony hate crime charges for traveling with a group of individuals who defaced the facades of two apartments belonging to the Brooklyn Museum's director and president even though he did not participate in the action. Mr. Seligson is a member of the media who has documented protests around the City and has sold footage to Reuters and ABC News.

    b. Fatih Aktaş, a photojournalist for the Turkish state-run outlet Anadolu Agency, was shoved to the ground by multiple New York City police officers while covering a pro-Palestinian protest in Brooklyn on May 31, 2024. Protesters gathered outside Barclays

---

[1] These incidents are all tracked via Press Freedom Tracker.

      Center arena at 3 p.m., NBC News reported, before walking the mile to the Brooklyn Museum, where they occupied the plaza and entered the building, hanging banners both inside and on the facade and calling for a cease-fire in the ongoing Israel-Hamas war.

c. Alexa Wilkinson, Gerard Dalbon, and Peter Hambrecht, were assaulted at a fundraiser for former Vice President Kamala Harris on August 14, 2024. Pro-Palestinian protesters rallied outside the event, demonstrating against the Biden administration's military support for Israel amid the ongoing Israel-Gaza war.

d. Documentary photographer Q. Sakamaki was shoved with a baton and kicked by a New York City police officer on Oct. 7, 2024, while documenting demonstrations marking the anniversary of the Hamas attack on Israel and the beginning of the Israel-Gaza war. Sakamaki told the U.S. Press Freedom Tracker that he has covered protests in the city for decades and was photographing the protests in Manhattan that day. He said he was in a densely packed crowd with numerous other members of the press, photographing the arrest of a pro-Palestinian protester, when his camera strap suddenly became entangled with an officer's baton.

e. Freelance photojournalist Olga Fedorova was shoved to the ground and arrested by New York City police while documenting a pro-Palestinian protest on May 7, 2024.

f. Independent photojournalist Gabe Quinones was struck by a New York City police officer who attempted to knock the phone from his hands as he reported on a protest outside Columbia University on April 20, 2024.

41. The City of New York has maintained a policy and practice of violating the First Amendment rights of journalists despite its agreements in the George Floyd cases.

42. The physical force used on journalists is specifically motivated to deter coverage of speech with which the Mayor and NYPD staff disagree and/or seek to discourage for political purposes.

## FIRST CAUSE OF ACTION
### Excessive Force Under the Fourth Amendment and New York City Administrative Code
### All Defendants

43. Plaintiff repeats and reiterates the allegations set forth in paragraph's "1" through "39" inclusive of this Complaint with the same force and effect as though fully set forth hereat.

44. That the Defendants violated the Fourth Amendment Rights of Plaintiff.

45. That the actions of these Defendant against Plaintiff were objectively excessive and unreasonable.

46. Defendants caused Plaintiff to be deprived of her Rights, Privileges, and Immunities as secured by the Constitution of the United States, and other federal

laws: namely, the Fourth Amendment to the Constitution of the United States, and 42 U.S.C. § 1983.

47. As a result of the acts of each Defendant complained of, Plaintiff sustained injuries, pain and suffering, emotional distress, medical and other expenses, loss of enjoyment of life, and other pecuniary loss.

## SECOND CAUSE OF ACTION
### First Amendment Violation
### All Defendants

48. Plaintiff repeats and reiterates the allegations set forth in paragraph's "1" through "44" inclusive of this Complaint with the same force and effect as though fully set forth hereat.

49. That the Defendants violated the First Amendment Rights of Plaintiff.

50. That the actions of these Defendant against Plaintiff were in retaliation for recording the actions of police and for being present at a protest that the officers and their superiors disapproved of.

51. Defendants caused Plaintiff to be deprived of her Rights, Privileges, and Immunities as secured by the Constitution of the United States, and other federal laws: namely, the First Amendment to the Constitution of the United States, and 42 U.S.C. § 1983.

52. As a result of the acts of each Defendant complained of, Plaintiff sustained injuries, pain and suffering, emotional distress, medical and other expenses, loss of enjoyment of life, and other pecuniary loss.

### THIRD CAUSE OF ACTION
#### *Monell* Claims for Violation
#### First, Fourth, and Fourteenth Amendments
#### Against the City of New York

53. In using excessive force and arresting without probable cause and/or assaulting the Plaintiff for recording police activity in public, the NYPD Officer Defendants violated plaintiff's clearly established rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution.

54. At all times relevant to this Complaint, the NYPD Officer Defendants were acting under color of state law.

55. At all times relevant to this Complaint, the NYPD has had a widespread policy, custom and practice of obstructing and/or preventing members of the media from recording police activity in public locations, and of targeting, arresting and/or assaulting journalists for recording police activity in public places, in violation of the First, Fourth and Fourteenth Amendments to the United States Constitution.

56. At all times relevant to this Complaint, the City, Mayor Adams, and other NYPD supervisory personnel have been on notice that the NYPD has a policy, custom and practice of obstructing and/or preventing members of the media from recording police activity, and of targeting, arresting, and assaulting journalists for recording police activity in public places, but have failed to rectify this unconstitutional policy, custom and practice, thereby demonstrating deliberate indifference to citizens' First Amendment, Fourth Amendment and Fourteenth Amendment rights.

57. Despite this notice, the City, Mayor Adams, and other NYPD supervisory personnel have failed to properly train NYPD officers about the First Amendment right of the public and press to record public scenes of police activity, thereby demonstrating deliberate indifference to citizens' constitutional rights.

58. Despite this notice, the City, Mayor Adams, and other NYPD supervisory personnel have failed to supervise and discipline NYPD officers for unlawfully interfering with the First Amendment right of the public and press to record public scenes of police activity, thereby demonstrating displaying deliberate indifference to citizens' constitutional rights.

59. By their actions and inactions, the City, Mayor Adams, and other NYPD supervisory personnel, all of whom are responsible for establishing policies, have implemented, enforced, encouraged, sanctioned and ratified policies, customs and practices that interfere with, and retaliate against, the exercise by journalists of their First Amendment right to record police activity in public places. These actions and inactions caused the violations of Plaintiff's First, Fourth and Fourteenth Amendment rights.

60. These unconstitutional policies, customs and practices were the moving force behind the NYPD Officer Defendants' violations of the Plaintiff's constitutional rights as alleged herein, rendering the City to plaintiff under 42 U.S.C. § 1983.

61. As a direct and proximate result of the City's unconstitutional policies, customs and practices, the Plaintiff suffered damage including impairment of

their First, Fourth and Fourteenth Amendment rights, physical injuries, emotional distress, and professional injuries.

Dated: March 5, 2025
      New York, NY

                                              **WERTHEIMER LLC**

                                              Joel A. Wertheimer
                                              14 Wall Street, Suite 1603
                                              New York, New York 10005
                                              (646) 720-1098
                                              joel@joelwertheimer.com

                                              Ali Najmi, Esq.
                                              Law Office of Ali Najmi
                                              32 Broadway, Suite 1310
                                              New York, NY 10004
                                              T: (212) 401-6222
                                              F: (888) 370-2397